IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| Harold Sauls, *et al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | NO. 4:19-cv-00953-O |
| | § | |
| 24 Hour Fitness USA, Inc., | § | |
| | § | |
| Defendant. | § | Jury Demanded |

## PLAINTIFF'S MOTION TO COMPEL, WITH BRIEF IN SUPPORT

Plaintiff Harold Sauls ("Mr. Sauls") hereby moves to compel proper discovery responses and production of documents from Defendant, 24 Hour Fitness USA, Inc. ("24 Hour"), in connection with discovery requests which were served over four (4) months ago. This motion is supported by the following brief and the accompanying appendix.

In summary, Mr. Sauls asks the Court to overrule 24 Hour's objections to Interrogatory No. 19 from his First Set of Interrogatories, and Requests for Production Nos. 18-19, 23, 28-29, 31-43, 46-49, and 73 from his First Request for Production. These requests seek production of the following categories of documents and information:

- Information pertaining to other incidents involving falls in or around hot tubs at 24 Hour clubs in the D/FW metroplex area;

- Information pertaining to maintenance of the hot tub at issue, which is clearly relevant to the issues in this case;

- Information pertaining to inspections of the hot tub by 24 Hour and government agencies (as the City of Fort Worth ordered 24 Hour to close the hot tub on the day of the incident before the incident occurred, and on multiple other occasions during the several years immediately prior to Mr. Sauls' incident in similar circumstances);

- Information pertaining to 24 Hour's investigations of the incident, and Mr. Sauls;

- Personnel information pertaining to fact witnesses Robert Frickman (the 24 Hour employee who was responsible for maintaining the hot tub) and Jonatan Marin (Mr.

Sauls' tour guide at the time of the incident), e.g. training and performance history, both generally and as it relates to this incident; and

- Architectural plans, drawings, and field reports/photographs from design, planning, and construction of the hot tub and its surrounding areas.

As discussed in Section I of the brief, counsel for the parties have conferred in writing and by telephone in an attempt to resolve the discovery dispute without Court involvement.  The parties have had success in resolving limited portions of their dispute, but they have been unable to resolve the remaining issues that are raised in this motion.  There are no apparent prospects for further success in the foreseeable future.  24 Hour contends that it has not been able to provide amended responses or additional documents due to the COVID-19 pandemic, but its actions in other litigation and recent additional document production raise questions about the validity of that contention.   More importantly, 24 Hour now contends that it cannot commit to producing additional documents *or even agree to withdraw objections* until some undetermined point that may be weeks (or months) into the future, i.e. whenever 24 Hour re-opens its regional club facilities.  However, it is neither logical nor feasible to indefinitely defer resolution of objections on four-month-old discovery, only to risk 24 Hour maintaining its objections and requiring a motion to compel at that time.

As such, further delays in resolving those objections will either unduly delay this case or will prejudice Mr. Sauls' ability to pursue it.  Mr. Sauls is specifically concerned that he will otherwise not be able to obtain the responsive documents/information in time to use for preparation and cross-examination during requested depositions of key 24 Hour employees,[1] and provide them to any liability experts which he may designate, in advance of his Court-ordered expert designation deadline on July 24, 2020.[2]  Mr. Sauls' counsel has expressed this concern to 24 Hour's counsel multiple times, but there has been no significant movement on these issues.

---

[1] Mr. Sauls has asked for these depositions for several months, pre-dating COVID-19, with the clear expression to 24 Hour that he needs the requested documents to produced before these depositions occur.

[2] If the expert deadline stood alone, Mr. Sauls would readily agree to extend the deadline for a reasonable period of time that would not encroach upon other deadlines in the case.  However, so long as 24 Hour's objections remain, an

Therefore, since 24 Hour is unable to withdraw its objections, it appears impossible to resolve the parties' discovery dispute without Court involvement, and Mr. Sauls believes he has no alternative but to move to compel at this time.   As to any documents which can be accessed remotely, electronically, or via other non-physical means at this time, Mr. Sauls requests an order compelling production of all responsive documents within 14 days.  Even if the Court ultimately determines that 24 Hour is not required to produce additional documents until social distancing procedures are relaxed, Mr. Sauls nevertheless requests that the Court rule on the objections discussed herein, so that discovery can be speedily completed as soon as the Court deems it appropriate.

Ordinarily, attorney fees are awarded to the prevailing party on a motion to compel.  However, under the circumstances of this case, Mr. Sauls does not seek an award of attorney fees.

---

extension would only risk the need for filing this motion to compel at a later time, at which point the delay of other deadlines could not be avoided.

**<u>Table of Contents</u>**

BRIEF IN SUPPORT ................................................................................................ 1

I.    Summary of the discovery dispute and attempts to resolve without Court involvement .......... 1

II.   Applicable legal standards ............................................................................... 6

III.  24-Hour failed to provide proper interrogatory responses. ...................................... 8

    A.    Lack of verification ................................................................................ 8

    B.    Interrogatory No. 19 .............................................................................. 8

IV.   24 Hour failed to properly produce documents. ................................................. 10

    A.    Request No. 18 .................................................................................... 10

    B.    Request No. 19 .................................................................................... 12

    C.    Requests Nos. 23 and 46-48 ................................................................. 15

    D.    Requests Nos. 28 and 29 ...................................................................... 19

    E.    Requests Nos. 31-43 ............................................................................ 21

    F.    Request No. 49 .................................................................................... 22

    G.    Request No. 73 .................................................................................... 23

V.    Mr. Sauls does not seek attorney fees. ............................................................. 24

VI.   Conclusion ................................................................................................. 24

## <u>Table of Authorities</u>

**Cases**

*Hickman v. Taylor,* 329 U.S. 495 (1947) …………………………………...……………..……..…6

*McCleod, Alexander, Powell, & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990). …………………………………………………….……………...6, 9, 20

*Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193 (Tex. 1993). ………………………...…………16

**Rules**

Fed. R. Civ. P. 26 …………………………………………………...............1, 6-7, 15, 17-19

Fed. R. Civ. P. 33 …………………………………………………………………….. 6, 8

Fed. R. Civ. P. 34 …………………………………………………….……6, 7, 11, 20

Fed. R. Civ. P. 37 …………………………………………….………………….......7

Tex. R. Civ. P. 192.5  …………………………………………….…………...……..16

**BRIEF IN SUPPORT**

I.   **Summary of the discovery dispute and attempts to resolve without Court involvement**

This case involves claims of premises liability, negligence, and gross negligence in connection with a fall suffered by Mr. Sauls into an empty hot tub during a tour of a 24 Hour club facility, with resulting damages (including permanent impairment) in excess of $1,000,000.00. More specifically, Mr. Sauls contends that he fell from a ground-level walkway into a sunken hot tub that had been drained and had inadequate lighting (or other lighting/electrical issues), but that was not closed off to the public or even identified with warning signs. As such, obvious issues for discovery include the objective risks of the design/layout of the hot tub room and walkway, the effect of lighting (or lack thereof) on visibility, and the failure to close the room or provide warnings. Equally obvious topics include 24 Hour's subjective awareness of these risks and its disregard thereof.

Upon filing this action in state court in October, 2019, Mr. Sauls promptly served discovery requests. Then, after removal, the parties agreed that Mr. Sauls would serve new discovery under the Federal Rules. Mr. Sauls promptly did so on December 18, 2019, two days after the Rule 26(f) conference. *See* Pl's Appx., Ex.A at 2-3; Pl's Appx., Ex.B at 5-6.[3]

On January 16, 2020, Mr. Sauls agreed to extend the deadline for discovery responses, to February, 7, 2020 (at the request of 24 Hour), with the express expectation that the extra time would result in meaningful, good faith responses with minimal objections. *See* Pl's Appx., Ex.C at 8. However, that expectation was disappointed upon receiving 24 Hour's responses. *See* Pl's Appx., Ex.D at 10; Pl's Appx., Ex.E at 15. 24 Hour produced only 280 pages of documents (along with a few videos and embedded photos),[4] while unduly limiting its response based on objections that wholly

---

[3] In accordance with Local Rule LR 5.2, Mr. Sauls is submitting only the portions of discovery necessary to resolution of this motion. Since each request is quoted in 24 Hour's responses (Exhibits D and E), Exhibits A and B consist only of the cover page and certificate of service of each set of discovery requests.

[4] These documents primarily consisted of 24 Hour's primary insurance policy and its "Facility Technician Playbook."

failed to satisfy the Federal Rules of Civil Procedure and which attempted to avoid production of clearly relevant information based solely upon 24 Hour's opinions as to what the relevant issues are in the case. Mr. Sauls' counsel was readily able to draw the inferences from 24 Hour's responses that not only had numerous responsive documents (which should have been readily-available) not been produced, but that these documents *had not even been searched for* by 24 Hour during the approximately seven (7) weeks in which 24 Hour had to respond to these requests.

Accordingly, on February 14, 2020, counsel for Mr. Sauls initiated the meet-and-confer process by sending a letter which outlined his concerns in detail and requested that 24 Hour either withdraw various objections or provide a written response and a time to confer by telephone. *See* Pl's Appx., Ex.F at 41. 24 Hour did not provide the written response which Mr. Sauls requested, but counsel for the parties nevertheless conferred at length via telephone on March 5, 2020. The results of the call and next steps were memorialized in an email sent to 24-Hour's counsel on March 10, 2020, which generally memorialized Mr. Sauls' counsel's understanding that 24 Hour would provide supplemental response or updates in approximately three (3) weeks from conference per counsel's discussion during the call (i.e. by March 26, 2020). *See* Pl's Appx., Ex.G at 50. When March 26, 2020, passed without any amended responses or additional documents, counsel for Mr. Sauls sent an email on March 27, 2020, requesting an update. Pl's Appx., Ex.G at 48. 24-Hour's counsel did not respond.

On March 31, 2020, without any response, counsel for Mr. Sauls again requested an update. Pl's Appx., Ex.G at 47-48. Counsel for 24-Hour responded that 24 Hour had cut off his access to 24 Hour's employees due to the close of 24 Hour's operations. Pl's Appx., Ex.G at 47 (stating that "there is no one for us to contact about this").

Subsequent events, however, indicate that 24-Hour still has control over, and access to, its employees—including those at the regional fitness centers—and that it could have provided its attorneys with access to those employees if it had wished or actually endeavored to do so. Indeed, 24 Hour has provided other attorneys with such access in other litigation . . . *when 24-Hour found it*

*advantageous to its own interests.*  For instance, in early-April, 2020, 24 Hour filed the declaration of Robert Crosby in support of a motion for summary adjudication in the *Crump v. 24 Hour Fitness USA, Inc.* matter pending in Los Angeles Superior Court.  Significantly, the declaration indicates that:

- Mr. Crosby was the General Manager of a regional club facility, i.e. one of the clubs that had been closed since March 16, 2020. *Compare* Pl's Appx., Ex.H at 52 *with* Pl's Appx., Ex.G at 47.

- Mr. Crosby was located in North Hollywood, an area with greater social-distancing restrictions than North Texas. *See* Pl's Appx., Ex.H at 52, 54.

- Mr. Crosby still had access to 24 Hour's business records, which comports with representations that 24 Hour's records are generally electronic records on corporate-wide systems. *Compare* Pl's Appx., Ex.H at 53 *with* Pl's Appx., Ex.G at 45.

Most significantly, the declaration was signed on March 27, 2020, the day *after* 24 Hour was supposed to provide updated responses to Mr. Sauls' discovery requests, and more than 10 days after 24-Hour supposedly cut off contact from its counsel in this action.  *Compare* Pl's Appx., Ex.H at 54 *with* Pl's Appx., Ex.G at 47.

Furthermore, many of the documents discussed in this motion (*e.g.*, incident reports, employee records, etc.) appear to be electronic documents in corporate-wide document-retention systems.  *See, e.g.,* Pl's Appx., Ex.G at 45 (noting incident reports are ordinarily retained in central location); Pl's Appx., Ex.H at 53 (asserting that all policies are created by corporate office).  Therefore, it seems that such documents could be accessed online by 24 Hour's IT department or other currently-active employees.  And there can be no dispute that 24 Hour has maintained active online operations, as 24 Hour:

- Has continued to offer online classes and other activities via its 24Go app and websites such as Youtube, Zoom, and 24Life, *see, e.g. https://www.24hourfitness.com* (last accessed April 27, 2020);

- Has continued to offer online and telephone customer service, *see, e.g. https://www.24hourfitness.com/contact_us/#/* (last accessed April 27, 2020); and

- Continued to bill its customers credit cards until April 16, 2020—a full moth after it apparently chose to cut off access to its counsel in this action, *see, e.g. https://www.24hourfitness.com/company/faq/#covid-19* (last accessed April 27, 2020).[5]

Therefore, while Mr. Sauls does not doubt the truth of opposing counsel's assertion that 24 Hour *has not* provided him access to employees and documents, it seems equally true that 24 Hour *could have provided access if it wished to do so*—exactly as it did in *Crump* to support its own motion for summary judgment.

In any event, Mr. Sauls accepted the representations that 24 Hour could not immediately provide amended responses and additional documents, and instead sought clarification as to what would be produced in the future.  For instance, on March 31, 2020, counsel for Mr. Sauls sought clarification as to the documents that had been collected before 24 Hour closed its regional fitness facilities, as to what 24 Hour was agreeing to produce, and as to when that production would occur. Pl's Appx., Ex.G at 46.  Most importantly, Mr. Sauls requested confirmation as to what objections were being withdrawn or maintained—a decision to be made by counsel.  Pl's Appx., Ex.G at 46.

On April 3, 2020, 24 Hour responded with information about the collection of documents before March 16, 2020, but it did not provide information regarding the other requests.  In particular, 24 Hour again failed to provide any information regarding the status of its objections.  Pl's Appx., Ex.G at 45.

Therefore, on April 7, 2020—in conjunction with other issues, such as documents that should exist based on the result of open-records requests independently obtained by Mr. Sauls' counsel—Mr. Sauls requested the information again, including clarification regarding 24 Hour's intent to maintain objections.  Pl's Appx., Ex.G at 44.Moreover, Mr. Sauls made clear that time was of the essence and

---

[5] Furthermore, it appears that 24 Hour only stopped this billing due to public outcry and a class-action lawsuit. *See Labib v. 24 Hour Fitness*, No. 20-cv-02134-JD (N.D. Cal., filed March 27, 2020).  If the allegations of *Labib* are correct, then 24 Hour billed its customers' credit cards for over $100,000,000.00 between March 16, 2020, and April 15, 2020— the same time period that 24 Hour could not provide contact information to its counsel in this case.

that a motion to compel would be the only option if 24 Hour could not or would not provide clarification on these issues by April 21, 2020.  Pl's Appx., Ex.G at 44.

Mr. Sauls did not receive any response by April 21, 2020.  Therefore, on April 21 and 23, 2020, Mr. Sauls sent correspondence which (in addition to discussing other issues) indicated he intended to file a motion to compel on April 28, 2020, if the various issues had not been resolved by that time. Pl's Appx., Ex.I at 58-60, Pl's Appx., Ex.J at 64.  On April 24, 2020, counsel for 24 Hour confirmed that he could neither commit to production of any additional documents nor withdraw any objections. Pl's Appx., Ex.J at 63.  Furthermore, he made clear that he could not do either until 24-Hour's normal operations resume. Pl's Appx., Ex.J at 63.

On April 28, 2020, 24 Hour served a privilege log and produced additional documents Bates-numbered 24HF_000281-000493.  Pl's Appx., Ex.K at 66-67.  This new document production consisted of a 121-page excess insurance policy, 90 pages of documents that do not appear on their face to contain any readily discernable information which is responsive to any of Mr. Sauls' discovery requests, and two (2) pages of additional email correspondence pertaining to the incident.  However, this additional document production is still woefully short of the complete information which Mr. Sauls believes is likely to exist, based upon both information provided by 24 Hour and Mr. Sauls' own, independent investigation of this case.

Therefore, Mr. Sauls believes he has no alternative but to bring the instant motion to resolve the outstanding objections, as any additional delay would be counterproductive and would undermine the very purposes of the conference requirements in the Federal Rules.[6]  Mr. Sauls has exercised the utmost diligence in seeking discovery and in attempting to resolve the parties' discovery disputes

---

[6] Mr. Sauls previously expressed a willingness to extend the most imminent deadlines (*e.g.*, regarding experts), but such an extension would be meaningless until 24 Hour's objections are either withdrawn or overruled.  Simply put, it would be wholly impractical to await amended responses at some indeterminate date in the future, only to have 24 Hour maintain its objections, require a motion to compel at that point, and require an additional extension that would then upset the remaining deadlines in this action.

(beginning the conference process in February, 2020, just days after the responses were received). However, it has now been four (4) full months since the discovery requests were served, and Mr. Sauls still has not received confirmation that 24 Hour will withdraw its objections or produce additional documents.  Since the objections cannot be withdrawn, Mr. Sauls seeks the Court's assistance in resolving the objections, to allow discovery to be completed promptly at an appropriate time as the Court may determine.

Accordingly, Mr. Sauls requests that the Court overrule 24 Hour's objections and compel proper discovery responses and production of documents within 14 days.  If 24 Hour is able to demonstrate that it genuinely cannot produce any of the documents at this time, then the Court should at least overrule the objections and require proper responses, with production of documents to follow at a time which the Court may deem appropriate.

## II.    Applicable legal standards

The scope of discovery under the Federal Rules of Civil Procedure is deliberately broad: "The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor,* 329 U.S. 495, 501 (1947).  Thus, the scope of discovery includes any matter that is relevant and proportional to the needs of the case, and information "need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

In the context of written discovery requests, a party seeking to avoid discovery must first make objections in sufficient detail to satisfy the applicable Rules, i.e. with "specificity."  *See* Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B).  These two requirements render boilerplate objections meaningless in Federal Court.  *See, e.g.*, *McCleod, Alexander, Powell, & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

Furthermore, as to document requests, an "objection must state whether any responsive materials are being withheld on the basis of that objection."  Fed. R. Civ. P. 34(b)(2)(C).  As to both interrogatories and documents requests, the responding party must provide complete information to the part(s) of any request that are not subject to objection.  *See* Fed. R. Civ. P. 33(b)(3) ("Each

interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); Fed. R. Civ. P. 34(b)(2)(C) ("An objection to part of a request must specify the part and permit inspection of the rest.").

Finally, as to objections based on privilege, Rule 26(b)(5) imposes a heightened burden, requiring the objecting party to:

> (i) expressly make the claim; and

> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5).  Failure to satisfy the applicable requirements waives the objections.  *See, e.g.*, *Quarles*, 894 F.2d at 1485; Fed. R. Civ. P. 26(b)(5).

If the responding party makes improper or inadequate objections, or otherwise fails to properly respond or produce documents, the party seeking discovery may move to compel production under Rule 37(a)(3)(B).  For the purposes of such motions, "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).  In responding to a motion to compel, the party resisting discovery must "show specifically how . . . each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive." *Quarles*, 894 F.2d at 1485.

Under Rule 37, an award of attorney fees is mandatory unless:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

III.   <u>**24-Hour failed to provide proper interrogatory responses.**</u>

  The bulk of the issues regarding 24 Hour's interrogatory responses have been resolved, as Mr. Sauls is willing to accept the representations of 24 Hour's counsel regarding Interrogatories Nos. 6, 8, 9, and 17 (so long as those representations do not change). Therefore, the only outstanding issues for the Court's consideration concern: (1) verification; and (2) Interrogatory No. 19.

  **A.**  **Lack of verification**

  The issue of verification is simple and straightforward. Rule 33(b)(3) requires the interrogatories to be answered under oath. *See* Fed. R. Civ. P. 33(b)(3). But 24 Hour's interrogatory responses did not include a verification of any kind. *See* Pl's Appx., Ex.D at 11-14.

  Mr. Sauls assumed the absence of a verification was an accidental omission, since the lack of verification was not based on any objections, could not have been based on any issues that would require a conference among the parties, and would not require any further investigation on 24-Hour's part. As such, Mr. Sauls expected the missing verification to be supplied shortly after he raised the issue in his February 14, 2020, letter. *See* Pl's Appx., Ex.F at 35. However, no verification has been provided in the nearly two and a half (2 1/2) months since then.

  Therefore, the Court should compel 24 Hour to provide a verification of the previously-provided interrogatory responses. Likewise, the Court should order 24 Hour to include an appropriate verification to any amended or supplemental responses that may be forthcoming.

  **B.**  **Interrogatory No. 19**

  Interrogatory No. 19 asked for information about slips, trips, or falls in hot tubs in other 24 Hour facilities prior to Mr. Sauls' incident. In response, 24 Hour limited its answer to only the facility in which Mr. Sauls fell, based on the objections of "overbroad, irrelevant, unduly burdensome, and disproportionate to the needs of this case." *See* Pl's Appx., Ex.D at 12-13.

  To the contrary, this request was neither irrelevant nor overbroad, as it is relevant to both: (1) the objective risks related to the design of the hot tub room (*e.g.*, width of the concourses, the

presence/absence of handrails, etc.), lighting and other visibility issues, the presence/absence of signage or other fall/injury prevention measures, etc.; and (2) 24 Hour's awareness and disregard of those risks.

Furthermore, the relevance of past incidents is not limited to incidents at the facility in question, as the risks and knowledge of risks would apply across all of 24 Hour's facilities. That is particularly true since 24 Hour has asserted in various suits that all of its policies are created by its corporate office on a company-wide basis, *see* Pl's Appx., Ex.H at 53*,* and since its risk-management documents (at least generally) are stored in electronic form in a company-wide central location. *See* Pl's Appx., Ex.G at 45.

Regardless of whether the layout at other facilities is the same, the requested information is relevant to risks, 24 Hour's knowledge of risks, 24 Hour's warnings of risks, and alternatives available to avoid or minimize risk. For instance, as to design and layout, incidents at similar facilities would obviously be similar to the risks at this facility. Conversely, incidents at dissimilar facilities would bear on the feasibility and relative risks associated with alternative designs. And risks related to lighting and warning signs would apply equally, regardless of the design in question. As such, there is no merit to the objections of irrelevance or overbreadth.

Nor is there any basis for the objections of undue burden or disproportionality. Indeed, neither objection has been asserted with enough specificity to satisfy the Federal Rules. *See, e.g., McCleod, Alexander, Powell, & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990). More importantly, 24 Hour could not justify the objections even if they had not been waived. To be sure, 24 Hour might be able to justify the objections if it demonstrated that the relevant documents consisted of paper copies spread over hundreds of individual facilities. But 24 Hour cannot do so, as 24 Hour has indicated that its risk management documents are collected in electronic form in a central location. *See, e.g.,* Pl's Appx., Ex.G at 45. As such, the relative burden of searching across all facilities should be a matter of keystrokes, and might well be simpler than limiting the search to single facility or a group of facilities.

Nevertheless, in conferring on these issues, counsel for Mr. Sauls expressed a willingness to accept records of incidents in the Dallas/Fort Worth metropolitan area, rather than all nationwide incidents, *if* it were less burdensome to produce that subset of information. Since 24 Hour has provided no clarification on the relevant burden of production (and asserts that it cannot do so now), Mr. Sauls believes he is entitled to the full, nationwide record of all responsive incidents. However, at the very least, Mr. Sauls is entitled to records of all such incidents in the D/FW area. Accordingly, Mr. Sauls requests that the Court overrule 24 Hour's objections and compel a complete response to Interrogatory No. 19.

## IV.   24 Hour failed to properly produce documents.

As to requests for production, the parties require Court involvement to timely resolve their disputes over Requests Nos. 18-19, 23, 28-29, 46-49, and 73, as well as a limited portion of Requests Nos. 31-43.

### A.   Request No. 18

In Request No. 18, Mr. Sauls sought "policies/procedures, training materials, memoranda, and reports" regarding the hot tub and hot tub room at issue in this case:

> All policies/procedures, training materials, memoranda, and reports pertaining to the maintenance of the hot tub room and hot tub in the Gym which were in effect at the time of Plaintiff's incident and for the five (5) years before the incident.

Pl's Appx., Ex.E at 18.

In response, 24 Hour unilaterally limited its production to a "Facilities Technician Playbook" and objected to all other documents based on three (3) relevance/overbreadth objections. Pl's Appx., Ex.E at 18. First, 24 Hour broadly objected to the entire request because it "seeks irrelevant information" as "Plaintiff has not alleged any problems or shortcomings in 24 Hour Fitness's maintenance of the hot tub." However, this objection is absurd, since relevance is not limited to "problems or shortcomings in . . . maintenance" (although any such shortcomings would obviously bear on the existence of dangerous condition). Rather, this request is manifestly relevant to issues

such as the existence of dangers from inadequate design and the need for safety protections during maintenance (*e.g.*, closing the area and including warning signs), as well as 24 Hour's awareness of the risks involved.  As such, this objection is not only without merit; but is frivolous.

Second, as to "memoranda and reports," 24 Hour objected that the request was overbroad and sought irrelevant information to the extent that it extended to issues such as PH levels and water temperature.  To the contrary, reports including those issues would be relevant if they *also* include other information, such as information related to lighting/electrical issues, safety procedure, etc.  More importantly, even as to reports limited *solely* to PH levels or water temperature, Rule 34(b)(2)(C) required 24 Hour to limit its objections to those documents, while producing all other reports that were not so limited.  In other words, 24 Hour should have produced the reports related to (for instance) maintenance on lighting/electrical issues or any other maintenance that required draining the hot tub.  And it should have done so in early February, 2020, long before the COVID-19 social-distancing restrictions began.

Finally, as to policies and procedures, 24 Hour objects that only the then-current policies and procedures are relevant and that those "not in use at the time of the accident . . . have no bearing on the case."  Pl's Appx., Ex.E at 18.  This objection is also frivolous, since changes to policies over time may illustrate both existence of risks and the knowledge thereof.  Furthermore, the Rules of Evidence recognize that even *post-accident* changes in policies are both relevant *and admissible* on issues such as "impeachment," "ownership, control, or the feasibility of precautionary measures," and *pre-accident* changes in policy are necessarily relevant to the same issues.  *See* Fed. R. Evid. 407.

Accordingly, 24 Hour's objections should be overruled, and 24 Hour should be compelled to produce all responsive documents.  At minimum, Mr. Sauls believes that existing documents should include reports, logs, and checklists, training materials and policies regarding hot tub maintenance, and documents pertaining to the duties of Mr. Robert Frickman (the employee whom 24 Hour

contends was responsible for maintenance and was maintaining the hot tub at the time of Mr. Sauls' incident).[7]  Such documents would include any document (regarding training, for instance) provided by third-party vendors, if such documents are in 24 Hour's possession, custody, or control.  Finally, Mr. Sauls believes there should be a work order and other documentation for the maintenance activities which were actually occurring at the time of Mr. Sauls' incident, and such documentation is responsive to this request.  This belief regarding the existence of documents is not drawn from thin air, but is based upon other information available in the "Facility Technician Playbook" which 24 Hour produced in response to Mr. Sauls' First Request for Production.  The "Facility Technician Playbook" indicates that 24 Hour's databases/servers should contain numerous documents and correspondence pertaining to maintenance which was underway at the time of Mr. Sauls' incident, in addition to prior incidents in which 24 Hour was ordered to close the hot tub by the City of Fort Worth in similar (if not identical) circumstances to those which were present at the time of Mr. Sauls' incident, as discussed further below.[8]

**B.      Request No. 19**

Request No. 19 is virtually identical to Request No. 18, except that it relates to "inspections" instead of maintenance.  In turn, 24 Hour made almost-identical objections that are without merit for the reasons already discussed regarding Request 18.  *See* Pl's Appx., Ex.E at 18.  Therefore, the Court should overrule 24 Hour's objections and compel production of responsive documents.

---

[7] Some of these document (*e.g.*, regarding Mr. Frickman's training) will overlap with other requests, such as the request for Mr. Frickman's personnel file.  Of course, such documents need only be produced once.

[8] 24 Hour produced the "Facility Technician Playbook" under representation that it is proprietary, confidential business information.  While the parties are not technically subject to any binding confidentiality agreement or protective order at this time, Mr. Sauls cautiously believes that his position on the availability of additional documents based upon references in the "Facility Technician Playbook" is unlikely to be disputed by 24 Hour.  Therefore, in the spirit of professional courtesy, Mr. Sauls does not attach relevant excerpts from the "Facility Technician Playbook" with this Motion so that they will be filed into public record at this time.  However, Mr. Sauls reserves the right to expand upon this position if necessary in any Reply, and to offer these documents to the Court as may be appropriate should 24 Hour dispute Mr. Sauls' position.

Responsive documents are not limited to inspections directed *solely* to the hot tub or hot tub room, but encompass all inspections that *included* the hot tub or hot tub room.  In particular, Mr. Sauls expressly identified two categories of documents at the parties' conference: (1) inspections of the club and its operations by 24 Hour and/or its corporate office (which Mr. Sauls believes are generally referred to as corporate "audits"); and (2) inspections of this particular 24 Hour club by the City of Fort Worth, or other governmental agencies.  *See* Pl's Appx., Ex. G at 49.

As to the former, 24 Hour contends that it cannot even search for such documents, because it has not provided its counsel with anyone that can access its documents.  As noted above, 24 Hour's contention is somewhat questionable, since:

- 24 Hour was able to provide its attorney with access to employees (even regional fitness club employees) in other litigation, when it has been advantageous to do so;

- 24 Hour's audits are corporate documents that are presumably in a central electronic repository that could be accessed online by its IT personnel or others, regardless of whether 24 Hour's clubs are open; and

- 24 Hour has been able to continue it online operations including classes, customer service, and (until April 16) billing.

*See, e.g.,* Pl's Appx., Ex.H at 52-54; *https://www.24hourfitness.com* (last accessed April 27, 2020).  In addition, as demonstrated by its additional document production on April 28, 2020, 24 Hour certainly has access to at least some information at this time.  Nevertheless, even if the Court determines that 24 Hour cannot produce its corporate audit documents at this time, the Court should nevertheless rule on 24 Hour's objections.  As noted in Section I above, 24 Hour not only contends that it cannot produce the documents at this time; it also cannot agree to withdraw its objections.

As to the latter (government inspections), 24 Hour's counsel has indicated that no responsive documents exist, and that Mr. Sauls should make open-records requests to the City of Fort Worth (the "City").  Therefore, Mr. Sauls obtained hot tub inspection records from the City on his own,

independent investigation of this case.  According to these records, the City ordered 24 Hour to close the hot tub on the day of Mr. Sauls' incident following an inspection because there was a problem with the underwater light and electrical issues with the hot tub.  The City also ordered at least five (5) other closures of the hot tub in similar (if not identical) circumstances from 2010-2018, including three (3) ordered closures in the three years immediately prior to Mr. Sauls' incident, on each of the following dates:

- May 3, 2017;

- January 27, 2016;

- May 28, 2015;

- December 26, 2013; and

- July 22, 2010.

Following receipt and review of these documents, Mr. Sauls' counsel requested the production of the following specific items/categories of items on April 7, 2020, all of which are directly responsive to Request No. 19:

- Any internal emails between 24 Hour Fitness employees regarding closures ordered by the City on 4/18/18, 5/3/17, 1/27/16, 5/28/15, 12/26/13, and 7/22/10;

- Any emails between 24 Hour Fitness employees and the City of Fort Worth regarding closures ordered by the City on 4/18/18, 5/3/17, 1/27/16, 5/28/15, 12/26/13, and 7/22/10;

- Any applicable protocols/policies/or procedures when a closure was ordered;

- Any records pertaining to internal reviews, safety reviews, auditing, reprimands, write-ups, and evaluations following these ordered closures; and

- Any reports regarding such closures.

Pl's Appx., Ex. G at 44.  Mr. Sauls further requested that, at a minimum, 24 Hour search through the email accounts for the following information related to each of these ordered hot tub closure incidents:

- Robert Frickman;

- Mr. Frickman's supervisor(s);

- The store manager(s) to whom Mr. Frickman would have reported to or otherwise would have had some role in response to the closures which were ordered during Mr. Frickman's tenure.

- Any other responsible employees (such as Timothy Jones), their supervisors, and the store managers pertaining to any ordered hot tub closures before Mr. Frickman became the Facility Technician; and

- Any regional or corporate-level managers who would have been notified about these ordered hot tub closures or been involved with the closures or their aftermath in some way.

Pl's Appx., Ex.G at 44.  On April 24, 2020, 24 Hour responded that it could not determine what documents/information exist with respect to these areas of discovery, where they are saved, or how burdensome it would be to locate them.  Pl's Appx., Ex.J at 63.  Yet again, 24 Hour will not commit to an agreement to produce (or even *search for*) the requested documents and information nor commit to whether it will withdraw its objections to the request.

Therefore, the only alternative is to present these objections to the Court for decision.  As such, Mr. Sauls requests that the Court overrule the objections and compel production within 14 days or at another time which the Court may deem appropriate.

### C.       Requests Nos. 23 and 46-48

As discussed above, privilege objections are subject to more stringent requirements than other objections, requiring the objecting party to:

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5).  However, 24 Hour ignored these objections throughout its discovery responses.

Request No. 23 will illustrate the point.   Mr. Sauls essentially requested all internal communications regarding his incident.   However, 24 Hour objected that it was withholding all communications after the date on which it received a representation letter from Mr. Sauls' prior counsel (i.e. on or after May 11, 2018), on the grounds that *all* communications made after that date are protected by attorney-client privilege or as work product.

Of course, such a broad protection is unsupported by any authority on any privilege in any jurisdiction of which the undersigned is aware.   Certainly, it is unsupported by Texas law, which limits work-product protection to documents created "in" anticipation of litigation and not to all documents created "after" anticipation of litigation.   *See, e.g.,* Tex. R. Civ. P. 192.5(a).   In other words, in order to qualify for work product production, the document must be created for the specific "purpose" of preparing for litigation, and its protections do not extend to documents that would have been created for other business purposes.   *See, e.g., Nat'l Tank Co. v. Brotherton,* 851 S.W.2d 193, 207 (Tex. 1993). Furthermore, certain information and documents, including witness statements, photographs/electronic images of underlying facts, and the identification of persons with knowledge of relevant facts, are exempt from the definition of work product even if they were created for the purpose of litigation. *See* Tex. R. Civ. P. 192.5(c).

Thus, several categories of documents obviously do not fall into any privilege categories, such as managerial evaluation of employee performance and discipline, discussions regarding the facts of the incident which incurred only between non-legal employees and had no purpose directly related to litigation, or evaluation of potential remedial measures to prevent future incidents.   To use the most obvious example in this case, privileges would not protect communications or other documents related to business decisions by 24 Hour's management, such as whether Mr. Jonatan Marin (Mr. Sauls' tour guide at the time of the incident) and Mr. Frickman followed company policies, whether they should be reprimanded or praised, or whether company policies should be modified in light of the incident.   And such communications would be expected to exist, involving combinations of

communications between Marin/Frickman, their managers at the local club, their superiors at the regional and corporate levels, and perhaps even communications with managers at other clubs.  Not only would such communications be relevant (a point which 24 Hour does not dispute), but the absence of such communications would also be relevant. Accordingly, all such communications should have been collected and produced by early February, 2020—over two-and-a-half (2 ½) months ago.

Do such communications exist?  Do other categories of non-privileged communications exist? Or did other individuals/employees participate in communications or investigation of this incident who are persons with knowledge of relevant facts, but whose identities have not been disclosed?  It is impossible to tell, because 24 Hour made an overbroad privilege assertion as to all documents and information created or obtained after the date on which it contends it anticipated litigation (May 11, 2018, when Mr. Sauls' prior counsel set his initial Letter of Representation to 24 Hour),[9] without regard to whether they were created for the purpose of litigation.  *See* Pl.'s Appx., Ex. K at 66-67.  This overbroad objection goes beyond the scope of protection under Texas law, but more importantly it fails to satisfy the procedural requirements of Federal law.  Simply put, 24 Hour did not even attempt to meet the requirements of Rule 26, and its objection is waived.   *See, e.g.,* Fed. R. Civ. P. 26(b)(5). The same is true for the objections to Requests Nos. 46, 47, and 48, which contain *only* privilege objections.

Nevertheless, Mr. Sauls indicated that he would not assert waiver without giving 24 Hour an additional opportunity to provide a privilege log, or otherwise comply with Rule 26.   On April 28, 2020 (the same day that Mr. Sauls indicated that he intended to file his motion to compel), 24 Hour produced a rudimentary two-page privilege log that identified five broad categories of documents. *See* Ex. K at 66-67.

---

[9] Pl's Appx., Ex.L at 70.

Unfortunately, the perfunctory log does not resolve the problems with 24 Hour's original objections—it incorporates them. The new log does not mention any communications involving 24 Hour's managerial employees (at the club level or the corporate level), despite the fact that such documents necessarily should exist. Accordingly, one would expect that such documents would be produced, as they should have been collected over two (2) months ago. However, that is not the case, as 24 Hour is continuing to assert privileges beyond those identified on its log. Specifically, footnote 1 states: "This privilege log is intended to supplement, and not replace, the privilege assertions stated in 24 Hour Fitness's discovery responses." Pl's Appx., Ex.K at 66. As such, 24 Hour is continuing to broadly withhold all documents and information created or obtained *after* May 11, 2018, whether or not they were created *in* anticipation of litigation, and whether or not they are listed on the privilege log.

24 Hour's continued use of its overbroad privilege assertion is untenable. The assertion of privilege as to all documents and information "after" as certain date is insufficient under both Texas substantive law and Federal procedural law. Therefore, 24 Hour's original objection should be overruled, and 24 Hour should be compelled to *immediately* produce all documents and information which do not fall into one of the categories listed on the privilege log—including all communications by and among Mr. Marin, Mr. Frickman, and their superiors.

Furthermore, problems remain even as to the five broad categories listed in the privilege log, since some of the categories do not provide the information needed to assess the claims of privilege. *See* Fed. R. Civ. 26(b)(5). As to some categories, it may be sufficient to simply describe the documents by regurgitating the language of the rules, as 24 Hour has done. For instance, as to category 2, Mr. Sauls is willing to assume that all communications with attorneys are privileged, and no further details are needed to assess these claims. But others are more problematic, since the persons involved (*e.g.,* risk management) presumably would have performed business functions separate and apart from preparing for or assisting in litigation. Their communications and other documents are not protected

if they were made for other business "purposes" (such as remedial measures), and that is especially true if 24 Hour's managerial personnel were involved in the communications.  Further, their identities are discoverable regardless, even if they participated in communications which may have included privileged information.  However, it is impossible to tell whether such documents exist and the identities of those individuals who prepared them (or participated in the communications), because: (1) the privilege log incorporates the original objection to all documents "after" the alleged anticipation of litigation began; and (2) the category descriptions in the privilege log do not provide sufficient information to assess the privileges described (*e.g.*, the identities of persons involved, and the "purposes" of the communications).

Therefore, Mr. Sauls requests that the Court: (1) overrule 24 Hour's original privilege objections in response to Requests Nos. 23, 46, 47, and 48; (2) order 24 Hour to produce all responsive documents that do not fall into one of the categories on 24 Hour's privilege log; (3) evaluate the categories on the privilege log to determine whether they satisfy Rule 26; and (4) order 24 Hour to produce documents whose privileged status cannot be determined from the privilege log.

### D.    Requests Nos. 28 and 29

Requests Nos. 28 and 29 seek production of personnel files, with particular emphasis on records related to pre-employment screening, reprimands or disciplinary action, and training materials. Pl's Appx., Ex.E at 20-21.  Request No. 28 was directed to the file for the employee whom escorted Mr. Sauls on the guided tour that led to his injury (Mr. Marin), and Request No. 29 was directed to maintenance and cleaning personnel.  24 Hour's counsel subsequently represented that Mr. Frickman was the only employee who was involved in maintenance of the hot tub, and Mr. Sauls limited Request No. 29 to his file during the parties' discovery conference.  *See* Pl's Appx., Ex.G at 49-50.  Thus, the files of only two employees (Mr. Marin and Mr. Frickman) are now at issue.

In response to these requests, 24 Hour refused to provide any employee files, based on objections of irrelevance, overbreadth, invasion of privacy, and disproportionality.  *See* Pl's Appx.,

Ex.E at 21.   In these instances, the objections are not specific enough to satisfy the requirements of Rule 34(b)(2)(B), and they are waived.  *See, e.g., McCleod, Alexander, Powell, & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990).   In any event, even if not waived, 24 Hour could not justify its objections or refusal to provide any responsive documents.  To the contrary, the files are relevant to issues already discussed—risks, awareness of risks, and disregard of risks—and they are also relevant for the purposes of impeachment.  As such, 24 Hour's objections should be overruled.

Nevertheless, at the parties' conference, counsel for Mr. Sauls agreed to limit the scope of the request, *e.g.,* by confirming that 24 Hour could omit tax records and pay information, except where it showed the employees' compensation structure (and even then Mr. Sauls agreed that 24 Hour could redact the actual wage figures).  Thus, the Court should compel production of the following materials and information for Mr. Frickman and Mr. Marin:

- Job applications, pre-employment screening records, and verifications/ background checks;
- Any employment agreement(s);
- Any compensation structure(s) for the duration of Mr. Marin's and Mr. Frickman's respective employment (with 24-Hour having the option to redact the actual salary or wage figures, but with the percentage of any commissions, bonuses, incentives, etc. being disclosed);
- Any training materials provided to Mr. Frickman or Mr. Marin;
- Any records of any reprimands or disciplinary actions;
- Any records of awards or recognitions for achievements;
- Any Aquatic Facility Operator (AFO) or Certified Pool Operator (CPO) certifications obtained by Mr. Frickman; and
- Any training materials or training records related to AFO, CPO, City of Fort Worth, or other pool/hot tub operator certifications taken by or provided to Mr. Frickman.

Furthermore, in accordance with the principle that a party must produce documents in its possession, custody, *or* control, such documents should include documents in the possession of vendors who provided training on 24 Hour's behalf.

E.       Requests Nos. 31-43

Requests Nos. 31 through 43 initially sought a variety of documents related to the design and construction of the hot tub, surrounding walkway, etc.  However, based on representations of 24 Hour's counsel, Mr. Sauls agreed to limit the requests to the following documents (most of which were referenced in, and part of, the contract that 24 Hour produced):

- All drawings, shop drawings, plans, and specifications, including:
  - Architectural AF1.3-Specifications, AF1.4-Specifications, AF4.2-Door Schedule & Hardware Specifications (per Exhibit 'A'-List of Documents, 24HF_000270, Raymond Construction);
  - Architectural AF7.4-Interior Elevations/Kids Club & Pool, AF8.3-Details/Wet Room, AF8.4-Details/Steam, Sauna, Pool & Spa (per Exhibit 'A'-List of Documents, Raymond Construction, 24HF_000271);
- Field inspection reports and any accompanying correspondence/photographs.

Accordingly, the Court should overrule 24 Hour's objections and compel production of such documents at the time the Court deems appropriate.

The design and layout of the hot tub and its surrounding areas are undisputedly relevant to Mr. Sauls' claims.  Specifically, Mr. Sauls contends that the design and layout of this area was unreasonably dangerous in that it placed the right edge of the hot tub into the direct path of travel from the point of entry into the area with inadequate landing space between the entrance and the edge of the hot tub.  Mr. Sauls also contends that the dangerous design and layout should have put 24 Hour on notice of the need to take appropriate protective measures and use appropriate warnings in this area.  Further, any changes made to the design and layout of this area during the design or construction phases, and the reasons for those changes, would bear directly upon 24 Hour's knowledge of risks. The architectural plans and drawings for this area are a type of documents which Mr. Sauls would expect to be readily available upon a meaningful effort to search for them.  Further, Mr. Sauls

anticipates designating a liability expert on this particular subject, and these documents are additionally sought for that purpose.

### F.      Request No. 49

In Request No. 49, Mr. Sauls requested documents related to 24 Hour's investigation of the incident.  Mr. Sauls specifically stated that he was not seeking documents protected by attorney-client privilege or the attorney work product doctrine.  However, a question has arisen regarding an investigation that was begun for other business purposes, rather than preparation for litigation, and whether other documents regarding that investigation exist.

More specifically, 24 Hour produced emails regarding an investigation prior to the date (approximately May 11, 2018) on which 24 Hour contends that it anticipated litigation (which Mr. Sauls will refer to as the "April 18 Investigation").  Pl's Appx, Ex.M at 72-85 (email thread).  In addition, on April 28, 2020, 24 Hour produced two (2) additional pages of email exchanges related to the incident which occurred between 24 Hour employees on April 25, 2018.  However, 24 Hour stated that it was withholding all information after the date it anticipated litigation (i.e. May 11, 2018, the date on which Mr. Sauls sent his initial Letter of Representation to 24 Hour).  From this objection, and the abrupt end to the email string, Pl.'s Appx., Ex. M at 72, it is unclear whether: (1) no other responsive documents exist regarding the April 18 Investigation; or (2) other documents exist but are being withheld.

On the afternoon of April 28, 2020 (the date Mr. Sauls had indicated he intended to file a motion to compel), 24 Hour provided a rudimentary privilege log identifying five categories of documents.  However, this log does not resolve the question of whether documents regarding the April 18 investigation are being withheld, since the log states that it "is intended to supplement, and not replace, the privilege assertions stated in 24 Hour Fitness's discovery responses."  Pl.'s Appx., Ex. K at 66-67.  As such, it appears 24 Hour is still withholding all investigation documents created after

May 11, 2018, whether or not they were created for the purpose of litigation or for another business purpose.  *See, e.g.,* § IV(C) *infra* (discussing work-product standards).

The issue has been further confused by the new log, as 24 Hour states that it has withheld an email exchange discussing the incident on April 24, 2018, between two 24 Hour employees on work-product privilege grounds—an exchange that was not subject to any objection in the response and which predates the date on which 24 Hour asserts that it anticipated litigation.  Pl's Appx., Ex. K at 66.  Since this communication took place before the date on which 24 Hour contends it anticipated litigation, the assertion of work product privilege to exclude these emails from discovery is not applicable, regardless of whether it "discussed" litigation.  More to the point, the reference to a "discussion of litigation" is not sufficient to allow the Court to determine whether the privilege applies, as required by Rule 26.  Therefore, the privilege issues regarding this limited set of documents (i.e. the April 24 exchange and other documents related to the April 18 investigation) can only be resolved by: (1) a determination that the objection has been waived; or (2) if the objection has not been waived, by examining the documents themselves via *in camera* review.

### G.       Request No. 73

Request No. 73 is analogous to Interrogatory No. 19, but is both broader and narrower in certain respects (*e.g.* it is limited only to hot tub rooms in the D/FW area, but is not limited to slips, trips, or falls into a hot tub):

> Produce any complaints related to a hot tub room in any 24 Hour Fitness gym in the Dallas-Fort Worth Metroplex area involving inadequate door landing space, lack of warning, or an inward-opening door since January 1, 2013.

Pl's Appx., Ex.E at 30.   In response, 24 Hour provided no documents, based on two relevance/overbreadth objections, but neither has merit.  *See* Pl's Appx., Ex.E at 30.

First, 24 Hour improperly limited the scope to "complaints pertaining to the falling or the risk of falling into the hot tub," asserting that all other complaints are irrelevant.  To the contrary, any

complaints about inadequate door landing space would be relevant to the risks of falls, regardless of whether they resulted in a fall "into" a hot tub.  Likewise, complaints regarding lack of warnings— particularly lack of warnings during maintenance—would be relevant regardless of whether the warning related to a risk of falls at all.

The second objection—that other 24 Hour facilities are irrelevant—has already been addressed in connection with Interrogatory No. 19, above.  Complaints at other clubs are relevant to the existence of objective risks, 24 Hour's awareness of those risks, and 24 Hour's disregard of those risks, particularly since 24 Hour contends its policies are created on corporate-wide level.  *See, e.g.,* Pl's Appx., Ex.H at 53.

Therefore, the Court should overrule 24 Hour's objections and compel production of all responsive documents.  If the Court determines that the documents are accessible online by any of 24 Hour's still-active corporate personnel, then it should compel production immediately.  Alternatively, if the Court determines that production is currently not feasible, then it should order production at a later time which the Court deems appropriate.

**V.      Mr. Sauls does not seek attorney fees.**

Ordinarily, attorney fees are mandatory on a motion to compel.  However, Mr. Sauls does not request fees under the circumstances of this case.  Rather, his only goal is to move the case forward, by resolving the outstanding objections that 24 Hour contends cannot be voluntarily withdrawn, and by setting a time for completion of this discovery as the Court deems appropriate.

**VI.      Conclusion**

As set forth above, Mr. Sauls requests an order overruling 24 Hour's objections.  As to any documents which can be accessed remotely, electronically, or via other non-physical means at this time, Mr. Sauls requests an order compelling production of all responsive documents within 14 days. Alternatively, if the Court determines that some of the requested documents cannot feasibly be

produced at this time, Mr. Sauls requests that the Court overrule 24 Hour's objections and order 24

Hour to produce the documents at a certain date and time.

Respectfully submitted,

**WARANCH & NUNN, PLLC**


By: /s/ Hunter A. Nunn
**HUNTER A. NUNN (Attorney in Charge)**
Texas Bar No. 24083587
**AMOS S. WARANCH**
Texas Bar No. 24090457
5720 LBJ Freeway, Suite 550
Dallas, Texas 75240
T: (972) 863-9592
F: (972) 767-0338
hnunn@waranchnunn.com
awaranch@waranchnunn.com

**AND**

William D. Taylor (TX 24046954)
Taylor & Taylor Law, P.C.
4115 Highgrove Dr.
Arlington, TX 76001
817.483.8388
Fax: 817.483.8390
Email: wtaylor@taylorandtaylorlaw.com
**ATTORNEYS     FOR     PLAINTIFFS
HAROLD AND LINDA SAULS**


## CERTIFICATE OF SERVICE

The foregoing notice will be served via the Court's ECF/ENS system on the date of entry on the Court's docket.

/s/ Hunter A. Nunn
Hunter A. Nunn


## CERTIFICATE OF CONFERENCE

The parties' attempts to confer on this issue over the past two months—by telephone and email—are set forth in detail in Section I above.  On April 24, 2020, counsel for 24Hour confirmed

that he could not withdraw 24Hour's objections or commit to production documents on the request at issue in this motion, and that he could not do so for the foreseeable future.  As such, counsel for Mr. Sauls believes that he has no choice but to bring the instance motion, which is opposed.

/s/ Hunter A. Nunn
Hunter A. Nunn